## Case No. 11,055.

PEYTON v. BLISS.

[Woolw. 170.] [1]

Circuit Court, E. D. Arkansas.    April Term, 1868.

THE REMOVAL FROM STATE COURTS OF CAUSES INVOLVING THE VALIDITY OF TITLES UNDER THE DIRECT-TAX LAW—ACT OF 1833 STILL IN FORCE—EXCEPTION—DIRECT TAXES UPON STATES—THAT ACT IS A REVENUE LAW.

1. The provisions of the act of March 2, 1833 (4 Stat. 632), relating to the removal of causes from state to federal courts, are still in force, except as to cases arising under the internal revenue system.

2. The act imposing direct taxes upon the states (12 Stat. 294) is not within this exception.

3. That act is a revenue law, and therefore cases arising under it are subject to removal under the act of 1833.

[Cited in Eaton v. Calhoun, 15 Fed. 156.]

4. Insurance Co. v. Ritchie, 5 Wall. [12 U. S.] 541, and Philadelphia v. Collector, Id. 720, commented on and distinguished.

At a prior term of the court, the defendant presented his petition for the removal of a suit then pending against him in the state court, alleging that it involved the question of the validity of a title to lands, to recover which it was brought, which title he derived from a sale of the lands for taxes, made by tax-commissioners under the acts of 1861 and 1862; and he prayed a certiorari to the state court, directing the return of the record under section 3 of the act of March 2, 1833. The writ was allowed, issued, and served, and the record returned, and the cause duly entered here. The defendant now moved to dismiss the writ which he had thus procured.

MILLER, Circuit Justice. The defendant, Bliss, filed his petition in this court at its last term, in which he stated that he was sued in the state court of Pulaski county, by the plaintiff, Craven Peyton, for the possession of certain real estate, and that his only title to said real estate is derived from a tax-sale made by the commissioner of taxes, appointed under the act of congress of June 7, 1862 (12 Stat. 422), to assess and collect the direct tax imposed by congress in the act of 1861 (12 Stat. 294), upon the state of Arkansas. He therefore prayed that a writ of certiorari might be issued, to remove said cause from the state court into this court, in pursuance of the 3d section of the act of March 2, 1833 (4 Stat. 632). In accordance with the prayer of this petition, the writ of certiorari was issued, and directed to the judge of the circuit court of Pulaski county, and was duly served on him the 6th day of June last.

The petitioner now moves to dismiss the

[1] [Reported by James M. Woolworth, Esq., and here reprinted by permission.]

writ of certiorari, on the ground that it was issued improvidently. and without authority of law. The plaintiff in the state court resists the motion.

It is clear that if the writ legally issued, the plaintiff in the suit cannot now be turned out of this court at the option of the party who brought him here. The only question is, therefore, whether the court had authority to issue the writ originally.

The act of March 2, 1833, under which this proceeding was instituted, was passed to enable the federal government to collect its customs, the only species of tax then authorized, in the state of South Carolina, which state, under its nullification ordinance, was attempting to resist their collection. It was a statute of several sections, and was known in the political dialect of the day as the "Force Bill." Some of its provisions were, by their terms, temporary, but those which relate to the removal of suits from state to federal courts, were intended to be permanent, and are now in full force, except as to cases arising under the laws known collectively as the "Internal Revenue System." By section 50 of the act to amend the internal revenue law, approved June 30, 1864 (13 Stat. 218), the provisions of the 1st and 2d sections of the act of 1833 were made applicable to cases arising under that system. But this section was repealed by section 67 of the act of July 13, 1866 (14 Stat. 98, p. 171), which also enacted, that the act of 1833 shall not be construed to apply to "causes arising under the internal revenue act, nor to any case in which the validity or interpretation of these acts shall be in issue."

If the act imposing a direct tax on the states, under which the petitioner's rights accrued, is an internal revenue act, within the meaning of the act of July, 1866, then the act of 1833 cannot be applied, because the act of 1866 expressly forbids it. But that act undoubtedly had reference to the system of laws known as the "Internal Revenue System"—a series of statutes commencing in 1862, and amended and modified at every session of congress from that time to the present. The act of 1861, on the contrary, imposed a direct tax on the states for a limited period, and has not since been extended or repeated. It is clear that the proviso to the act of 1866 must be limited to cases arising under the internal revenue system, and can have no application to cases arising under the act for assessing and collecting the direct tax.

Does the original act of 1833 apply to such cases? The 2d section of that act extends the jurisdiction of the circuit court of the United States to all cases in law or equity arising under the revenue laws of the United States, for which other provision is not already made by law. The 3d section gives to the defendant. in any suit commenced in any state court, for or on account of any act done under the revenue laws of the United States, or under color thereof, or for or on account of any

right, authority, or title, set up or claimed by him under any such law of the United States, a right to remove such suit into the proper federal court.

If the direct-tax law, under which this petitioner claims title to the property for which he is sued, is a revenue law, this case is within the terms of this statute. Any law which provides for the assessment and collection of a tax to defray the expenses of the government, is a revenue law. Such legislation is commonly referred to under the general term "revenue measures," and those measures include all the laws by which the government provides means for meeting its expenditures. I can imagine no definition of a government revenue which would not include all the money raised by any form of taxation. This view receives strong confirmation from the fact that the direct tax is imposed by a statute which revises and increases the duties on imports, and for the first time taxes incomes, thus embracing in one revenue law, customs, duties, direct taxes, and internal revenue. Its title is, "An act to provide increased revenue from imports, to pay interest on the public debt, and for other purposes." It is true that the act of 1833 is entitled, "An act to provide for the collection of duties and imports;" and, doubtless, imports, as a source of revenue. were mainly in the minds of its framers, as that was the only tax then authorized by congress. But the act was prospective, and gave the right in cases arising under the revenue laws, in the plural, and under any such law, that is, any revenue law. Congress could not have intended to provide a permanent remedy for the evils which caused the passage of that act, and at the same time to limit its effect to revenue laws then in force. I know of no rule of construction which, if it were applicable to future laws imposing duties on imports, would make it inapplicable to future laws raising revenue by direct taxation. The latter would be much more likely to need the aid of such a statute than the former.

It is supposed that these views are in conflict with some casual remarks on this statute found in the opinions of the supreme court in the cases of Insurance Co. v. Ritchie, 5 Wall. [72 U. S.] 541, and Philadelphia v. Collector, Id. 720. But it is obvious that the writers of these opinions had in their minds, at that time, no other revenue law than those which related to the customs, and those which were a part of the system of internal revenue already spoken of. They held that the statute was in force as regarded revenue from customs, and that by reason of the proviso to section 67 of the act of 1866, it was not applicable to cases arising under the internal revenue laws. But their attention was not called to the relation of that act to cases arising under the direct-tax law; and it would be an unsafe rule to interpret language used under such circumstances as intending to settle a principle not before the court, and in refer-

ence to a revenue law not in the minds of the writers of the opinion.

The motion to dismiss the writ of certiorari is overruled. Motion overruled.